**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, SAVE RGV, THE CARRIZO/COMECRUDO NATION OF TEXAS, INC., and SOUTH TEXAS ENVIRONMENTAL JUSTICE NETWORK,<br>Plaintiffs,<br><br>v.<br><br>BRIAN NESVIK, in his official capacity, and UNITED STATES FISH AND WILDLIFE SERVICE,<br>Defendants,<br><br>and<br><br>SPACE EXPLORATION TECHNOLOGIES CORP.,<br>Defendant-Intervenor. | Civil Action No. 1:26-cv-00831 |

**SPACE EXPLORATION TECHNOLOGIES CORP.'S**
**SUR-REPLY TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs' reply brief introduces new evidence, including two supplemental declarations, in a belated attempt to meet their burden to show standing and irreparable harm. Those new declarations and arguments should be struck and ignored as untimely. To the extent the Court considers the new arguments on standing and irreparable harm, SpaceX files this sur-reply to address them and a case that Plaintiffs cite that was issued after SpaceX filed its opposition brief.

As explained below, Plaintiffs' new evidence does not make the required clear showing that the proposed land exchange will cause them concrete, legally cognizable harm sufficient to establish standing and irreparable harm. And the new case—*Native Village of Hooper Bay v. Burgum*, No. 3:25-CV-00316-SLG, 2026 WL 2409781 (D. Alaska Aug. 18, 2026)—does not support their counter-textual argument that Section 111 of the National Historic Preservation Act (NHPA) bars the exchange.

**STATEMENT OF ISSUES**

1. Whether the Court should disregard or strike Plaintiffs' new injury theories and evidence or, if not, consider SpaceX's sur-reply on those issues. *See Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774–75 (5th Cir. 2024) (arguments and evidence raised for the first time in reply must be disregarded or the non-movant given an opportunity to respond).

2. Whether Plaintiffs' new materials clearly show standing and irreparable harm. *See Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (PI movant must clearly show standing); *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) (PI movant must clearly show likely irreparable harm).

3. Whether *Native Village of Hooper Bay v. Burgum*, supports Plaintiffs' claim that Section 111 of the NHPA bars the challenged land exchange. No. 3:25-CV-00316-SLG, 2026 WL 2409781, at *29 (D. Alaska Aug. 18, 2026) (holding a land exchange under Alaska National Interest Lands Conservation Act (ANILCA) required compliance with Refuge Act because ANILCA Section 304(a) incorporates it).

## ARGUMENT

### I. Plaintiffs' new harm theories and evidence should be disregarded.

"The general rule in the Fifth Circuit … is that arguments raised for the first time in a reply brief are waived." *Jones v. Gusman*, 515 F. Supp. 3d 520, 540 (E.D. La. 2021) (collecting cases), *aff'd sub nom. Anderson v. City of New Orleans*, 38 F.4th 472 (5th Cir. 2022). That rule applies to standing arguments. *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 & n.4 (5th Cir. 2019). A reply brief is not the place for plaintiffs to supply new evidence where an opposition identifies defects in their theories. Rather, "when a party provides new evidence for the first time in a reply, the district court has the discretion to decline to rely on that new evidence." *Sedwick v. McDonough*, No. 3:22-CV-02321-S-BT, 2026 WL 1459186, at *4 (N.D. Tex. May 5, 2026).

The Court should decline to consider Plaintiffs' new evidence and arguments here.[1] In the context of a preliminary injunction motion, Plaintiffs bear the burden of "mak[ing] a 'clear showing' that they have standing" and that they will likely suffer irreparable harm absent a preliminary injunction. *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). SpaceX pointed out numerous deficiencies in Plaintiffs' showing in their opening brief and supporting declarations, including that Plaintiffs' members are not authorized to access the exchange parcels and apparently only started seeking to visit them after learning of the exchange. Plaintiffs can argue in reply that their showing was adequate, but they should not be permitted to raise new standing theories or introduce new evidence. *See Ctr.*

[1] Plaintiffs' new arguments and evidence include: (1) that Mr. Chapman received now-expired authorizations from the Service to access parts of the Refuge, Reply Br. at 4 & n.3 (citing Chapman Supp. Decl., ¶ 4); (2) webpages stating that parts of the Refuge are open to the public, *id.* at 3 & nn.1–2; (3) that Massey Way's restricted-access signage must have been recently posted, *id.* at 5 (citing Chapman Supp. Decl., ¶ 6; Branch Supp. Decl., ¶ 6); (4) that SpaceX's expansion of its Massey test site will result in "increased explosions," *id.* at 8–10; and (5) that this expansion "may" make it "less likely to see" ocelots and jaguarundi "or signs of them" on other lands, *id.* at 8.

*for Biological Diversity*, 937 F.3d at 542 & n.4 (holding petitioners forfeited informational-injury theory raised in reply). The court in *BHI Energy I Power Servs., LLC v. KVP Energy Servs., LLC*, applied this standard, striking and declining to consider new declarations and documents that the movant filed with its reply and denying a preliminary injunction motion. No. 3:22-CV-1981-L, 2023 WL 223179, at *3–4, *8 (N.D. Tex. Jan. 17, 2023). Likewise, in *DuraPlas, LP v. DiversiTech Corp.*, the court held there was "no excuse" for a preliminary injunction movant to wait until its reply to present arguments and evidence available when the motion was filed. No. 3:25-CV-1310-K, 2026 WL 2087366, at *2–3 (N.D. Tex. July 20, 2026).

The Court should do the same here. Plaintiffs' reply includes new argument and declaration testimony alleging new injury-related facts, new factual sources (various websites) about purported public access to the exchange lands and adjoining roads, and new theories of injury-in-fact and irreparable harm. And given that Branch's original declaration states that she "understand[s] that oftentimes members of the public can request access to parts of the Refuge that are generally closed to the public," Dkt. 24-3 (Branch Decl.) ¶ 27, Plaintiffs can hardly claim that they were unaware that Defendants might rely on the fact that the Refuge lands at issue are closed to public access absent authorization. Chapman must have known about the closures too, because his supplemental declaration confirms that he previously obtained temporary Service authorization to access closed Refuge lands. Chapman Supp. Decl. ¶ 4.

Plaintiffs' new evidence and theories of injury should be disregarded as a belated attempt to carry Plaintiffs' standing and irreparable harm burdens. The Court should instead determine whether Plaintiffs' opening preliminary injunction record satisfies their requirement of making a "clear showing" of standing and irreparable harm. *See Barber*, 860 F.3d at 352.

## II. The new materials do not cure Plaintiffs' standing or irreparable-harm deficiencies.

If the Court considers Plaintiffs' new arguments and evidence, SpaceX must be given a fair opportunity to explain why they do not cure their failure to show standing or irreparable harm. *See Georgia Firefighters' Pension*, 99 F.4th at 774–75.

To start, Plaintiffs' reply cites Service webpages concerning public access to the Refuge. Reply Br. at 4 & n.4. But these webpages never identify the exchange parcels or Massey Way as open to the public, and they state that visitors are required to "[w]alk only on designated roads and trails."[2] They thus do not show that Plaintiffs have lawful access to the exchange parcels. The fact that other, distant portions of the Refuge are open to the public, including for hunting, does not establish standing in this case. *See Ctr. for Biological Diversity*, 937 F.3d at 538–39 ("[P]etitioners cannot simply assert some interest somewhere within a large geographic area.").

Plaintiffs' improper assertion of new facts in Chapman's supplemental declaration likewise does not change the outcome. Chapman now asserts, for the first time, that he was granted access to the Refuge "on at least two prior occasions" and that the grant "included authorization to access the areas of the Refuge that will be exchanged." Chapman Supp. Decl. ¶ 4. But he does not say that he visited the exchange parcels. Rather, he says the most recent authorization expired "at the end of 2024," and he only alleges having visited "the Massey Way area since June 2025" (presumably without authorization). *Id.* ¶¶ 4, 6. At most, then, Chapman's expired authorization establishes that he once had temporary access, not that he has current authorization or a concrete plan to obtain authorization and visit the exchange parcels.[3] And an asserted injury must be to a

[2] *See* https://www.fws.gov/refuge/lower-rio-grande-valley/visit-us (last visited Aug. 29, 2026). No such roads or trails appear on the maps of the exchange parcels.

[3] Plaintiffs' suggestion that restricted-access signage along Massey Way is recent conflicts with the Service's sworn testimony. *Compare* Chapman Supp. Decl. ¶ 6 *with* Dkt. 51-1 (I. DeLaGarza Decl.) ¶ 10 ("Historically, … signs have been posted alerting the public that the road is for private

legally protected access right, not an interest in continued unauthorized entry. *See Bell v. Redflex Traffic Sys., Inc.*, 374 F. App'x 518, 520 (5th Cir. 2010) (holding that an "interest in evading the law cannot create standing"); *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014).

Plaintiffs' new allegations of recent, unauthorized visits to the exchange parcels also fail because they are the type of "self-inflicted injury" that cannot establish standing or irreparable injury. *Ctr. for Biological Diversity*, 937 F.3d at 541; *Texas*, 662 F. Supp. 3d at 756. Indeed, Plaintiffs do not appear to deny that they only visited the exchange lands and Massey Way after deciding to oppose the exchange. Instead, they argue that the self-inflicted nature of their purported injuries "is irrelevant under *FEC v. Cruz*, 596 U.S. 289, 297 (2022)." Reply Br. at 8 n.7. But *Cruz* addressed traceability where an injury resulted from application of a challenged law, even if the injury was "willingly incurred." 596 U.S. at 297. That traceability holding does not upset the well-established rule that self-inflicted injuries cannot satisfy the injury requirement for Article III standing. Indeed, since *Cruz* was decided, the Fifth Circuit and this Court reaffirmed that standing could not be conferred through self-inflicted injuries. *See Louisiana v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 884 (5th Cir. 2023) (holding Louisiana's financial injuries "would be self-inflicted and therefore insufficient to confer standing."); *see also Texas*, 662 F. Supp. 3d at 756 (finding plaintiff's "self-inflicted harm is not irreparable").[4]

Similarly, if the Court were to consider Plaintiffs' new assertions of injury and irreparable harm to their alleged interests in enjoying other lands resulting from "increased explosions" at

---

access only."). Plaintiffs' subjective understanding of access does not override the Service's regulations, site-specific records, maps, and declaration regarding the road's access status.

[4] Plaintiffs' new assertion that their members "could (and would) apply for a permit to visit the Refuge and view the wildlife" is also a self-inflicted injury and does not establish concrete, imminent injury. Reply Br. at 5. A concrete plan to return is required. *Lujan*, 504 U.S. at 564. Plaintiffs identify no actual permit application or concrete plan to seek authorization to access the exchange parcels before they are conveyed. *See id*.

Massey's, the Court should hold the new evidence is too speculative and insufficiently concrete and particularized to establish standing or irreparable harm. *See* Reply Br. at 10; Chapman Supp. Decl. ¶ 9; Branch Supp. Decl. ¶ 7. Plaintiffs' layperson claim that their enjoyment of other, unspecified land will be harmed by a possible explosion caused by testing on an expanded facility, built away from Refuge land, is far too speculative to show any actual, imminent injury-in-fact, much less irreparable harm. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (speculative assertions of future harm do not satisfy the standing requirement); *Texas v. EPA*, 662 F. Supp. 3d 739, 756–57 (S.D. Tex. 2023). And, as the Supreme Court just reaffirmed, aesthetic harm that Plaintiffs' members allegedly may suffer from viewing development on the exchange lands from afar is insufficient to establish the requisite concrete and particularized harm. *Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the United States*, No. 26A203, 609 U.S. _, 2026 WL 2564318, at *2-3 (Aug. 31, 2026); *accord Env't Def. Fund v. FERC*, 2 F.4th 953, 969 (D.C. Cir. 2021) (finding that having to "look at an 'eyesore' several times per week while driving past" is not enough to show standing).

Plaintiffs' new allegations that the exchange will harm their interests in viewing wildlife, including "ocelots and jaguarundi," on unspecified other land are also too speculative. *See* Reply Br. at 8; Chapman Supp. Decl. ¶ 6. Not only do these allegations depend on speculation about the effects of SpaceX's future actions, but they also ignore the fact that ocelots have not been documented anywhere in the Boca Chica tract since 1998, and that the last reported citing of the jaguarundi in the United States was in 1986. Dkt. 26-4 (EA) at ECF Pages 83, 91–92.

## III. *Hooper Bay* does not support Plaintiffs' Section 111 theory.

Plaintiffs' reply on their National Historic Preservation Act (NHPA) Section 111 argument relies on *Native Village of Hooper Bay v. Burgum*, an unpublished district court order issued after SpaceX filed its opposition brief. In that case, a District Court in Alaska held that the Secretary of

the Interior was required to comply with the Refuge Act's "suitable for disposition" requirement when executing a land exchange under ANILCA. No. 3:25-CV-00316-SLG, 2026 WL 2409781, at *28, *30 (D. Alaska Aug. 18, 2026).

Plaintiffs cite *Hooper Bay* as support for their argument that both the Refuge Act and Section 111 should apply here. Reply Br. at 19. But the court in *Hooper Bay* concluded that the Refuge Act's suitability requirement applied to the ANILCA exchange because ANILCA expressly required national wildlife refuges in Alaska to continue to be administered in compliance with the Refuge Act. *See id.* at *29 ("Although Section 1302(h) of ANILCA supplies the authority to exchange lands within conservation system units, Section 304(a) directs that '[e]ach refuge shall be administered' in accordance with both 'the laws governing the administration of units of the National Wildlife Refuge System' and ANILCA."); *see* Pub. L. No. 96-487, 94 Stat. 2371, 2393 (1980). Here, by contrast, there is no conflict between Section 111 and the Refuge Act, and neither exchange authority directs compliance with the other. They are simply different grants of exchange authority. Because the Service applied its Refuge Act authority to make the exchange here, Section 111 does not apply.

**CONCLUSION**

Plaintiffs' preliminary injunction motion should be denied.

Dated: September 1, 2026

Respectfully Submitted,

*/s/ Tyler Welti*

Tyler G. Welti (D.C. Bar No. 1015691)
VENABLE LLP

101 California Street, Suite 3800
San Francisco, CA 94111
tgwelti@venable.com
Phone: 415-653-3714
Fax: 415-653-3755

Jay C. Johnson (D.C. Bar No. 487768)
(Admitted *Pro Hac Vice*)
VENABLE LLP
600 Massachusetts Ave., N.W.
Washington, DC 20001
jcjohnson@venable.com
Phone: 202-344-4000
Fax: 202-344-8300

**ATLAS, HALL & RODRIGUEZ, LLP**

Michael Rodriguez
222 N. Expressway 77, Suite 203
Brownsville, Texas 78521
Telephone: (956) 574-9333
Facsimile: (956) 574-9337
State Bar No. 00791553
Federal ID: 18753

Counsel for Defendant-Intervenor Space Exploration Technologies Corp.