**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN NESVIK, in his official capacity as Director of the United States Fish and Wildlife Service, et al.,<br><br>Federal Defendants,<br><br>SPACE EXPLORATION TECHNOLOGIES, CORP.,<br><br>Defendant-Intervenor. | No. 1:26-cv-0831 |

**FEDERAL DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


BACKGROUND ..... 1

A. Agency Process ..... 1

B. Public access to the property to be divested ..... 2

C. The Refuge's Conservation Plan ..... 5

STATEMENT OF THE ISSUES ..... 5

STANDARD OF REVIEW ..... 6

I. Lack of Standing/Subject Matter Jurisdiction ..... 6

II. Failure to State a Claim ..... 6

ARGUMENT ..... 7

I. Plaintiffs do not have standing to challenge the land exchange. ..... 7

II. Plaintiffs' Refuge Act, National Historic Preservation Act, and NEPA claims do not challenge final agency action reviewable under the APA. ..... 9

III. Plaintiffs' claim under 5 U.S.C. § 706(1) about the conservation plan fails to state a claim ..... 13

CONCLUSION ..... 15

**TABLE OF AUTHORITIES**


**Page(s)**

**Other Authorities**

*Am. Airlines, Inc. v. Herman*,
176 F.3d 283 (5th Cir. 1999) .......... 10, 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 6, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6, 7

*Bender v. Williamsport Area School Dist.*,
475 U.S. 534 (1986) .......... 6

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 10, 11, 12

*Common Sense Salmon Recovery v. Evans*,
217 F. Supp. 2d 17 (D.D.C. 2002) .......... 12

*Ctr. for Biological Diversity v. U.S. Dep't of Transp.*,
180 F.4th 796 (5th Cir. 2026) .......... 4, 5, 8, 9

*Ctr. For Food Safety v. S.M.R. Jewell*,
83 F. Supp. 3d 126 (D.D.C. 2015) .......... 14

*Dalton v. Specter*,
511 U.S. 462 (1994) .......... 11

*Deep S. Ctr. for Env't Just. v. U.S. Env't Prot. Agency*,
138 F.4th 310 (5th Cir. 2025) .......... 7

*Driftless Area Land Conservancy v. Rural Utilities Serv.*,
74 F.4th 489 (7th Cir. 2023) .......... 11

*Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*,
59 F.4th 180 (5th Cir. 2023) .......... 13, 14

*In re Katrina Canal Breaches Litig.*,
342 F. App'x 928 (5th Cir. 2009) .......... 12

*Louisiana v. Biden*,
622 F. Supp. 3d 267 (W.D. La. 2022) .......... 12

*Louisiana v. U.S. Army Corps of Eng'rs*,
834 F.3d 574 (5th Cir. 2016) .......... 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 6

*MediNatura, Inc. v. Food & Drug Admin.*,

998 F.3d 931 (D.C. Cir. 2021) ........ 12

*Nat'l Park Serv. v. Nat'l Tr. For Historic Pres.*,
No. 26A203, 2026 WL 2564318 (August 31, 2026) ........ 8, 9

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ........ 13

*Rochester Tel. Corp. v. United States*,
307 U.S. 125 (1939) ........ 11

*Save the Bay, Inc. v. U.S. Army*,
639 F.2d 1100 (5th Cir. 1981) ........ 6

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........ 7

*Veldhoen v. U.S. Coast Guard*,
35 F.3d 222 (5th Cir. 1994) ........ 12, 13

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1981) ........ 6

**Regulations**

16 U.S.C. § 668dd(b)(3) ........ 14

16 U.S.C. § 668dd(e) ........ 14

16 U.S.C. § 668dd(e)(1)(A)(iv) ........ 13, 14

16 U.S.C. § 668dd(e)(1)(D) ........ 14

5 U.S.C. § 704 ........ 9

5 U.S.C. § 706(1) ........ 5, 13

5 U.S.C. § 706(2) ........ 5, 10

**Rules**

Fed. R. Civ. P. 12(b) ........ 6

Fed. R. Civ. P. 12(b)(6) ........ 6, 7

Fed. R. Civ. P. 12(h)(3) ........ 6

**Regulations**

50 C.F.R. § 25.21 ........ 2

50 C.F.R. § 26.22 ........ 2

# FEDERAL DEFENDANTS' MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Brian Nesvik, in his official capacity as Director of the U.S. Fish and Wildlife Service, and the U.S. Fish and Wildlife Service ("Federal Defendants") respectfully request that the Court dismiss the amended complaint filed by the Center For Biological Diversity, Save RGV, The Carrizo/Comecrudo Nation Of Texas, Inc., and South Texas Environmental Justice Network ("Plaintiffs"), Am. Compl., Dkt. No. 48, for lack of jurisdiction and failure to state a claim.

## BACKGROUND

This case is about the Fish and Wildlife Service ("FWS" or "Service") seeking to improve its wildlife habitat holdings in Cameron County, Texas. The Service plans to divest approximately 727 acres of lower quality habitat out of the 103,500-acre Lower Rio Grande Valley National Wildlife Refuge ("the Refuge") in exchange for approximately 683 acres of higher quality habitat within and near the Refuge owned by Space Exploration Technologies, Inc. ("SpaceX")—land that will be added to the Refuge.

### A. Agency Process

In considering whether to exchange land with SpaceX, the Service conducted an environmental review under the National Environmental Policy Act ("NEPA"). It ultimately issued a Final Environmental Assessment, in which it identified exchanging land with SpaceX as the agency's preferred alternative, and a Finding of No Significant Impact ("FONSI") for that proposed exchange. Decl. of Leston Stewart Jacks ("Jacks Decl."), Dkt. No. 14-1, ¶¶ 20-21 (dated May 21, 2026); FONSI, Dkt. No. 26-1. The FONSI also included the Region 2 Office's recommendation that the Service move forward with the exchange, referred to as a "Decision Record," which the Region 2 Acting Director Leston Jacks signed. Dkt. No. 26-1 at 5. But

because of the value of the proposed land exchange, the FWS Director had to approve the exchange in writing after the Region 2 Office issued the Decision Record. U.S. FWS Non-Purchase Acquisition Manual, 342 FW 5.7(E)(2) (June 21, 1994).[1] The Region 2 Office prepared a memorandum for the FWS Director, who approved moving forward with the exchange on July 13, 2026. USFWS Decision Memo., Dkt. No. 26-21 ("Director's decision").

Plaintiffs, seeking to stop the land exchange, filed suit on June 10, 2026, more than a month before the Director's approval. Compl., Dkt. No. 1, ¶ 95 (claiming that the FONSI was the agency's final decision); *see also* Am. Compl., Dkt. No. 28, ¶ 96 (same). On July 20, 2026, Plaintiffs moved for emergency relief on the basis of the FONSI. Mem. in Supp. of Pl.'s Mot. for Prelim. Inj., Dkt. No. 24-1, at 15 (asserting that the Final Environmental Assessment and the FONSI "announced a final agency action"). After the case was transferred to this Court, Plaintiffs amended their complaint to add that the Region 2 Acting Director Mr. Jacks had recommended approval of the exchange to the FWS Director after the FONSI, Dkt. No. 48, ¶ 97, and that the FWS Director had concurred. *Id.* ¶ 98.

After the Director approved the land exchange, the Service notified Congress to provide for the required thirty-day congressional examination period. *See id.* ¶ 99. On September 1, 2026, after that period had expired, the Region 2 Acting Director signed the Land Exchange Agreement, committing the Service to the exchange. Fed. Defs.' Notice, Dkt. No. 56. As of the date of this motion, work toward closure of the land exchange is ongoing.

**B. Public access to the property to be divested**

The Refuge lands to be divested ("the Property") are located in the 11,500-acre Boca Chica Tract. The Property contains no public trails, and pursuant to Federal regulations, the

---

[1] Available at https://www.fws.gov/policy-library/342fw5.

Boca Chica Tract is generally not open to the public with the exception of (1) State Highway 4, (2) interpretive sites along State Highway 4, and (3) the Boca Chica beach. Declaration of Imer de la Garza ("De La Garza Decl."), Refuge Manager, Dkt. No. 51-1, ¶ 5 (citing 50 C.F.R. § 25.21). To open Refuge lands in accordance with governing law, the Service must conduct a compatibility determination for the contemplated public use. *Id.* The Service has not completed any compatibility determination to open the Boca Chica Tract generally to the public. *Id.* at ¶ 6. While special use permits to enter the Refuge are available, 50 C.F.R. § 26.22, Plaintiffs do not allege that they have a special use permit to access the land, or have ever had one, or have applied for one.[2]

Nevertheless, Plaintiffs' members claim that they "use and enjoy" the Refuge lands proposed for divestiture. Dkt. No. 24-1 at 19 (citing Chapman Decl., Dkt. No. 24-6, ¶¶ 7, 9, 10–13; Branch Decl., Dkt. No. 24-3, ¶ 7; Mancias Decl., Dkt. No. 24-5, ¶¶ 12–14; Hinojosa Decl., Dkt. No. 24-4, ¶¶ 5–9). Specifically, Ms. Branch, Mr. Chapman, and Mr. Mancias allege that they have accessed the Property at various points during the past year, and Ms. Branch and Mr. Chapman contend that they have observed flora and fauna within the Property, while parked on State Highway 4 or from a vessel on the Rio Grande. Ms. Hinojosa appears to mostly visit the beach, which is open to the public and is not where lands will be divested, although she claims to enjoy viewing the south side of State Highway 4. Hinojosa Decl., Dkt. No. 24-4, ¶ 8. Ms. Branch declares that she views the scenery and wildlife "within the proposed exchange area"

---

[2] Mr. Chapman alleges he has accessed the land pursuant to two letters from a Refuge Manager, the second of which expired in 2024. Chapman Supp. Decl., Dkt. No. 53-1, ¶ 4. Mr. Chapman has not produced the letter, so it is unclear what the terms of access were. In any event, Mr. Chapman does not allege that he has a current letter or permit providing him any access to the land, nor that he has applied for one (or a special use permit) or has any plans to do so.

from State Highway 4,[3] and "periodically stop[s] along the side of the road to view wildlife in the Refuge[,] includ[ing] land proposed to be given to SpaceX in the exchange." Branch Decl., Dkt. No. 24-3, ¶ 13; Supp. Branch Decl., Dkt. No. 53-2, ¶ 5. Mr. Chapman represents that he has viewed the wildlife within the Property from the Rio Grande on at least one occasion, and that the Service "granted [him] access to the Refuge on at least two prior occasions," including the area to be divested (or near it). Chapman Decl., Dkt. No. 24-6, ¶ 9; Supp. Chapman Decl., Dkt. No. 53-1, ¶ 4. And Mr. Mancias declares that he leads religious ceremonies at a location "sacred to [his] people [ ] along the Rio Grande River, including the lands that FWS is now giving to SpaceX for development and destruction (called the Divested lands by FWS)." Mancias Decl., Dkt. No. 24-5, ¶ 12.

But even though Ms. Branch, Mr. Chapman, and Mr. Mancias claim to have accessed relevant portions of the Refuge, they have not established that they have a legal right to do so. *Ctr. for Biological Diversity*, 2026 WL 2824297, at *10. And the other declarants (Ms. Hinojosa, Mr. Hartl, and Mr. Bradley) do not even claim to have accessed the Property. *Id.*

Ms. Branch and Mr. Chapman additionally state that they have observed flora and fauna within the Property from areas outside the lands: State Highway 4 and the Rio Grande. Ms. Branch speculates about explosions at the Massey Test Site at the Property and claims that they will "impact[] surrounding lands" and "harm habitat for protected wildlife and in fact all wildlife" that she allegedly "seek[s] out and enjoy[s]" in that area. Branch Decl., Dkt. No. 24-3, ¶ 20. She additionally speculates that the "noise and lights associated with construction of the Exchange parcel, and subsequently the explosions resulting from testing at this new site—and more frequent tests more generally—will disrupt and scare off wildlife that [she] enjoy[s]

[3] Paragraph 7 of Ms. Branch's declaration references the SpaceX launch facility, which is up near the beach and is distinct from the Massey Test Site. Branch Decl., Dkt. No. 24-3, ¶ 7.

observing in the area." Supp. Branch Decl., Dkt. No. 53-2, ¶ 7. Mr. Chapman speculates that SpaceX's plans for the exchange parcel will "disrupt and scare off wildlife that [he] enjoys observing in the area." Supp. Chapman Decl., Dkt. No. 53-1, ¶ 9. But neither declarant has offered any evidence to support their statements of alleged harm or environmental impact from SpaceX's plans near the Massey Test Site. *Ctr. for Biological Diversity*, 2026 WL 2824297, at *11.

### C. The Refuge's Conservation Plan

The Refuge is managed under the Final Lower Rio Grande Valley and Santa Ana National Wildlife Refuges Interim Comprehensive Management Plan ("Conservation Plan"). Doc. 26-3. The Conservation Plan is dated September 24, 1997. *Id.*

## STATEMENT OF THE ISSUES

1. Whether Plaintiffs' amended complaint must be dismissed for lack of jurisdiction because they do not have standing.

2. Whether Plaintiffs' claims under 5 U.S.C. § 706(2) must be dismissed for lack of jurisdiction because they challenge an interlocutory agency action, not final agency action.

3. Whether Plaintiffs' claim under 5 U.S.C. § 706(1) must be dismissed for failure to state a claim because they have not identified a discrete, mandatory duty that the agency has failed to perform or unreasonably delayed.

## STANDARD OF REVIEW

### I. Lack of Standing/Subject Matter Jurisdiction

When a plaintiff lacks standing, the suit must be dismissed for lack of subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The proper procedure to challenge standing is a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure or on the court's own motion. *See, e.g.*, *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541-42 (1986); *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1002 (5th Cir. 1981) (per curiam). When standing is challenged on factual grounds, the allegations in the complaint are not controlling, and evidence outside the pleadings is properly presented and considered by the Court to determine standing. *See, e.g.*, *Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). The plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

### II. Failure to State a Claim

To sufficiently plead a claim for relief and avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the plaintiff's claim must be "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). To survive a challenge pursuant to Rule 12(b)(6), a plaintiff must plead more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (interpreting Federal Rule of Civil

Procedure 12(b)(6)), 556. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555.

The Court should begin its analysis by identifying and rejecting conclusory allegations, because allegations not supported by specific facts "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court should next consider all "well-pleaded factual allegations . . . assume their veracity and then determine whether they plausibly give rise to an entitlement to relief" and dismiss them pursuant to Rule 12(b)(6) if they do not. *Id.*

## ARGUMENT

### I. Plaintiffs do not have standing to challenge the land exchange.

The Court should dismiss the amended complaint for lack of subject matter jurisdiction. Plaintiffs lack standing because they will suffer no concrete injury in fact from the land exchange. To establish Article III standing, a plaintiff must demonstrate that: (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the defendant's challenged action rather than the action of a third party; and (3) it is likely, as opposed to merely speculative, that a favorable judicial decision will prevent or redress the injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Organizations can assert the standing of their members. *Id.* at 494. "That, in turn, requires [the Court] to consider the individual members' alleged injuries—which 'must be concrete, particularized, and actual or imminent.'" *Deep S. Ctr. for Env't Just. v. U.S. Env't Prot. Agency*, 138 F.4th 310, 320 (5th Cir. 2025) (citation omitted). Like in *Deep South*, the Court can "begin and end with Article III standing," because Plaintiffs fail to establish any injury. *Id.* at 316.

For the same reasons that the Court found that Plaintiffs did not have standing for a

preliminary injunction, *Ctr. for Biological Diversity.,* 2026 WL 2824297, at *10–12, they do not have standing to challenge the land exchange. First, Plaintiffs "cannot rely on a loss of access to the Property as a basis for standing[,]" because the Refuge lands at issue are not open to the general public. *Id.* at *10; De la Garza Decl., ¶¶ 5–6, 8, 11. Accordingly, "no declarant will lose access to the Property as a result of the Land Exchange, given that they did not previously possess such a right," thus failing to establish injury from the divestment of the Property. *Ctr. for Biological Diversity*, 2026 WL 2824297 at * 10. As the Court noted, even if the Land Exchange were not to go forward, the property will remain closed to the public, precluding access by Plaintiffs' members. *Id.* Thus, Plaintiffs cannot establish that setting aside the agency's decision to conduct the land exchange will affect the status quo of no legal entry, so no injury can be established by privatization of the Property and continued lack of legal access.[4] *See id.*

Second, Plaintiffs cannot show that their aesthetic and recreational interests are injured because the alleged harms to their interest in viewing wildlife are either speculative or contravened by other evidence. *Id.* at *10–12.[5] Plaintiffs have not presented any evidence to support their personal beliefs that SpaceX's activity on the site would "scare off wildlife" that they purportedly enjoy viewing there. *Id.* at *11. Further, Plaintiffs' claims that they want to or can view certain wildlife in the area—ocelots or piping plover for instance—is contravened by

---

4 For this same reason, Plaintiffs fail the redressability prong too.

5 If Plaintiffs are contending that their preferred view of the land will be altered by development on the Property, such "distasteful view" allegations are insufficient to establish standing. *Nat'l Park Serv. v. Nat'l Tr. For Historic Pres. In the U.S.*, No. 26A203, 2026 WL 2564318, at *2 (August 31, 2026) (rejecting, as insufficient, an individual's affidavit that the construction of the White House ballroom "would cause her to suffer 'injuries' to her 'aesthetic, cultural, and historical interests' because she finds the 'scale,' 'height,' and 'massing' of the government's design distasteful").

the Service's finding in its Final Environmental Assessment that ocelot and piping plover are unlikely to occur in the divested lands. *Id.* Thus, again, the proposed divesture of the land would not change the status quo: Plaintiffs cannot establish that they can view that wildlife there now, and that would not change as a result of the divestiture. *See id.* Plaintiffs cannot establish harm based on interference with this specific land. *Id.*[6]

Accordingly, Plaintiffs will not experience any change in their legal access to the land or their ability to see certain species as a result of the land exchange, so they cannot establish injury. And because they have not established a cognizable injury, Plaintiffs have not established that a decision by this Court permanently enjoining the land exchange would redress anything (nor could it, given the preexisting lack of legal access and SpaceX's preexisting presence and development). Having failed to establish standing, Plaintiffs' challenge to the land exchange cannot move forward, and dismissal for lack of jurisdiction is warranted. *Ctr. for Biological Diversity v. U.S. Dep't of Transp.*, 180 F.4th 796, 800 (5th Cir. 2026) (a Federal court must deny review when plaintiffs fail to establish an injury).

## II. Plaintiffs' Refuge Act, National Historic Preservation Act, and NEPA claims do not challenge final agency action reviewable under the APA.

Even if Plaintiffs could establish standing, their claims One, Two, Four, and Five must be dismissed for lack of jurisdiction because they are not based on final agency action. Judicial review under Section 706(2) of the Administrative Procedure Act ("APA") is limited to "final agency action." 5 U.S.C. § 704; *see also* Am. Compl., Doc. 48, ¶¶ 1, 11, 67-69, 120, 128, 135, 142, 147 (citing the APA as the basis for the Court's review). Not everything an agency does

---

[6] Moreover, to support a concrete injury, any impacts on wildlife alleged as a result of the exchange would need to be supported as impacts resulting *specifically* from the expansion of the site and not from the current testing or development on the Property, and likewise with any viable claims as to changes to the view, which is already affected by the current development of the site.

constitutes final agency action reviewable by the courts. *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287–93 (5th Cir. 1999) (reviewing actions). For an agency action to be "final," it must (1) "mark the consummation of the agency's decision-making process" and (2) "be one by which rights or obligations have been determined, or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted). "Interlocutory" actions are not reviewable under the APA. *Id.* at 178. In this Circuit, lack of final agency action at the time of complaint is a fatal jurisdictional flaw that cannot be corrected through amending the complaint. *Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 584 (5th Cir. 2016) ("Final agency action . . . is a jurisdictional prerequisite of judicial review."). Because Plaintiffs sued before the Service approved the land exchange and before the Service signed the land exchange agreement, the Court lacks subject matter jurisdiction.

Plaintiffs' Counts One, Two, Four, and Five each challenge the land exchange under 5 U.S.C. § 706(2). Am. Comp. ¶¶ 120, 128, 142, 147. Plaintiffs base these claims on the environmental review the agency prepared in considering the land exchange—the FONSI. Compl. Dkt. No. 1, ¶ 95; Am. Comp. ¶ 96; Dkt. No. 24-1 at 15–16. Here, however, the FONSI fails both prongs of *Bennett*—it is not final agency action. First, the proposed land exchange needed additional approval within the Service after the FONSI. 342 FW 5.7(E)(2). In the context of the agency process here, the FONSI was a decision to recommend approval, Dkt. No. 24-1, which the Service followed with an actual recommendation to the Director, who held the authority to approve or disapprove the proposed land exchange. Dkt. No. 26-21. But even then, the process was not complete: only after the Director's decision, and only after the thirty-day congressional review, did FWS sign the Land Exchange Agreement, committing the agency to the land transfer. *See* Jacks Decl., Dkt. No. 14-1, ¶¶ 19–30 (outlining the steps required after the

Decision Record and prior to signing the Land Exchange Agreement). The signing of the Land Exchange Agreement opened a period of escrow and title work before the final title transfer.

Accordingly, although the FONSI documents the Service's decision to continue with the land exchange process, that action was not the consummation of the agency's decision making. Indeed, the Seventh Circuit recently denied as premature a request to stop a proposed land exchange by FWS based on the environmental review under NEPA. *Driftless Area Land Conservancy v. Rural Utilities Serv.*, 74 F.4th 489, 495–96 (7th Cir. 2023) (discussing that an environmental review under NEPA "differs from a decision to approve any given action"). Like in *Driftless*, the FONSI identified by Plaintiffs is "a prerequisite" to the land exchange "rather than the end of the agency's process." *Id.* at 494. Plaintiffs' ineffective attempt to amend their complaint to add additional facts about the approval process makes this point.

What's more, the FONSI did not determine "rights or obligations" or have "legal consequences[,]" and thus does not satisfy the second requirement for final agency action. *Bennett*, 520 U.S. at 178 (citation omitted). Any alteration of legal rights or obligations here happened when the Service signed the Land Exchange Agreement to exchange land with SpaceX. *See* Jacks Decl., ¶¶ 18–30. The FONSI thus, at best, "only affects . . . rights . . . on the contingency of future administrative action" and is, therefore, "nonfinal" agency action. *Am. Airlines*, 176 F.3d at 288 (citing *Rochester Tel. Corp. v. United State*s, 307 U.S. 125, 130 (1939)); *Dalton v. Specter*, 511 U.S. 462, 469 (1994) (holding that agency reports recommending military base closures were not final agency actions because they had "no direct consequences" absent "certification of approval" from the President).

Nor can the FWS Director's decision to approve the exchange or the Service's signing of the Land Exchange Agreement during the pendency of this suit save Plaintiffs' claims. "The fact

that [an agency's] final decision . . . is the same as its interlocutory decision does not retroactively transform the interlocutory decision into a final decision." *MediNatura, Inc. v. Food & Drug Admin.*, 998 F.3d 931, 940 (D.C. Cir. 2021). And Plaintiffs may not amend to cure a threshold, jurisdictional issue, as jurisdiction did not exist at the time of filing and "amendment may not create subject matter jurisdiction when none exists." *In re Katrina Canal Breaches Litig.*, 342 F. App'x 928, 931 (5th Cir. 2009) (per curiam). Instead, the complaint defines Plaintiffs' claims and does not challenge the executed land exchange, because it had not happened at the time they filed. Compl.; Am. Compl.; *Louisiana v. Biden*, 622 F. Supp. 3d 267, 286 (W.D. La. 2022) ("Subject matter jurisdiction is determined at the onset of the suit. The action cannot be a final agency action under the APA before it occurs.").

Plaintiffs' failure to challenge the executed land exchange, as opposed to interlocutory steps that have led to its execution, is not an empty formality. An administrative record is tied to the challenged agency action, and does not contain information post-dating the challenged action (and that would inherently not have been before the agency when it made its decision). *Common Sense Salmon Recovery v. Evans*, 217 F. Supp. 2d 17, 20–21 (D.D.C. 2002). Here, for example, the additional agency actions after the FONSI, like the Director's Approval and the signed land exchange agreement, would not be in the administrative record for this lawsuit, and thus key documents that could affect the merits of the suit would not be before the Court.

The FONSI thus fails to meet both prongs of *Bennett v. Spear*. It was not the consummation of the agency's decision-making, and no legal consequences flowed from it. Plaintiffs must base their complaint on final agency action to establish jurisdiction. *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) ("The APA permits 'non-statutory' judicial review only of 'final agency action.' If there is no 'final agency action,' as required by the

controlling statute, a court lacks subject matter jurisdiction.") (internal citations omitted). Plaintiffs did not base their claims on final agency action, so there is no waiver of sovereign immunity and no subject matter jurisdiction in this Court. *Id.* Accordingly, Plaintiffs' Claims One, Two, Four, and Five must be dismissed for lack of subject matter jurisdiction.

## III. Plaintiffs' claim under 5 U.S.C. § 706(1) about the conservation plan fails to state a claim.

Plaintiffs' claim under 5 U.S.C. § 706(1) is equally unavailing and must be dismissed. Plaintiffs claim that the Service has failed to revise its September 24, 1997 Conservation Plan in violation of the Refuge Act, which provides in 16 U.S.C. § 668dd(e)(1)(A)(iv) that the Service shall update a refuge's conservation plan "every 15 years . . . as may be necessary." 16 U.S.C. § 668dd(e)(1)(A)(iv); Am. Compl. ¶¶ 130–135. Plaintiffs claim this purported failure constitutes "agency action unlawfully withheld and unreasonably delayed" under APA Section 706(1). Am. Compl. at ¶ 130. But Plaintiffs fail to state a claim for agency action unlawfully withheld *or* unreasonably delayed and their claim must be dismissed.

Plaintiffs bring an "unreasonable delay" claim regarding revision of the Conservation Plan. Am. Compl. at ¶¶ 129–135. But Plaintiffs have failed to identify a violation of 5 U.S.C. § 706(1). To prevail on an unreasonable delay claim under Section 706(1), Plaintiffs must show that the Service has a mandatory duty to update the plan. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004). They cannot do so. The Refuge Act provides that the Service "shall" update a conservation plan every 15 years "as may be necessary." 16 U.S.C. § 668dd(e)(1)(A)(iv). In a case considering nearly identical language, the Fifth Circuit found that the Army Corps of Engineers could not be compelled to revise water control manuals where the agency's regulation provided the manuals "shall be revised as necessary to conform to changing requirements" resulting from certain events. *Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 198

(5th Cir. 2023). The Fifth Circuit concluded that the phrase "as necessary" qualified "shall" so that the agency had no mandatory duty to revise its manuals. *Id.* Congress used the same qualifying language in the Refuge Act, leaving it to the Service to determine when to revise a conservation plan. 16 U.S.C. § 668dd(e)(1)(A)(iv). The Act does not specify what conditions would require an updated conservation plan. The Service must therefore exercise its discretion to determine the need for an update. "Such discretion is antithetical to a mandatory duty." *Fort Bend Cnty.*, 59 F.4th at 198. Plaintiffs' failure to act claim thus cannot succeed on the merits because there is no mandatory duty to revise the Conservation Plan in the first instance.

Further, even if there were such a duty, Plaintiffs plead no relief related to the land exchange that the Court can grant on this claim. Permanently enjoining the land exchange would not be an appropriate remedy for the failure to issue a revised Conservation Plan. Conservation Plans and land exchanges are governed by separate statutory authorities and separate agency guidance, and neither one mentions the other. Land exchanges are governed by 16 U.S.C. § 668dd(b)(3), which does not reference conservation plans. Conservation plans are governed by 16 U.S.C. § 668dd(e), which does not reference land exchanges. The agency's Non-Purchase Acquisition guidance also does not provide that land exchanges must be analyzed with reference to the Conservation Plan, although it does provide for other required analyses (*e.g.*, a net conservation analysis). 342 FW 5.7. And the Refuge Act allows the Service to continue "uses or activities consistent with this Act," including land exchanges, "before existing plans are revised," such that the Service need not withhold decisions affecting the Refuge. 16 U.S.C. § 668dd(e)(1)(D). Accordingly, Plaintiffs' claims about the Conservation Plan revision do not provide a basis to permanently enjoin the land exchange. *Ctr. For Food Safety v. S.M.R. Jewell*, 83 F. Supp. 3d 126, 131-132, 145 (D.D.C. 2015) (declining to enjoin agency action based on a

purportedly delayed conservation plan update). Plaintiffs' Count Three fails to state a claim on which relief can be granted and must be dismissed.

**CONCLUSION**

For these reasons, Federal Defendants respectfully request that the Court dismiss Plaintiffs' amended complaint.

Dated: October 2, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
United States Department of Justice
Energy & Natural Resources Division

/s/ *Alison S. Vicks*
ALISON S. VICKS
(*Pro Hac Vice*)
Trial Attorney
KRYSTAL-ROSE PEREZ, TX Bar No. 24105931
Senior Trial Attorney
U.S. Department of Justice
Natural Resources Section
150 M Street NE
Washington, DC 20002
(202) 297-2862 (Vicks)
(202) 532-3266 (Perez)
alison.vicks@usdoj.gov
krystal-rose.perez@usdoj.gov

*Attorneys for Defendants*